We'll proceed with the day calendar for this morning. First case is SEC versus Rajaratnam. Good morning, if you may please the court. I'm Samit Guha from Jones Day on behalf of the appellant, Mr. Rajaratnam. May I reserve three minutes for rebuttal time? Yeah, you have three minutes reserved, is that right? Yes. Okay, you're all set. And with the court's indulgence I'll start by addressing the discretion issues that were that were that were briefed by us in these proceedings. The district court below abused its discretion by expressly and consciously foreclosing any consideration of the considerable criminal sanctions that were imposed on the SEC penalty. What about his statement that the amount of any financial penalty in a parallel criminal action may also be relevant? Sorry? Remember that line from the opinion due, right? Yes, I do. I do, Your Honor. There are two responses. First of all, he did not take consideration of the 11-year criminal sentence, which if the purpose of 21A penalty is to consider punishment and deterrence, foreclosing the 11-year criminal sentence, which has an impact obviously on both goals, seems artificial and seems to be a very relevant consideration. But to Your Honor's point directly, while that is what the district court said, in articulating a paradigm, and this was a very conscious choice by the district court, at the appendix starting at the bottom of page 369 going into 370, he articulated a that by definition would foreclose consideration even of the financial penalties. What he stated was that most important that the criminal sanction was intended to address moral blameworthiness, and he specifically said, by contrast, the civil penalty is designed most importantly to make unlawful trading a money-losing proposition, not just for the defendant, but for all who would consider it by showing that if you get caught, you are going to pay severely in monetary terms. So he was setting up consciously a paradigm where the criminal consequences are separated and isolated from his consideration of the factors in imposing a penalty. And that kind of artificial bubble that was constructed around the civil penalty is not consistent with the mandate of 21A, which requires . . . He ignored the 11 years in prison. Is that what you said? Yes, Your Honor. Well, on page 368, he goes through all the other penalties that your client got, the 11 years in prison, the forfeiture, and the criminal penalties, the fine of $10 million. Why do you say he ignored that? I'm sorry? Why do you say he ignored that? I say he ignored it because he told us that the district court below, again going back to my point, the district court below, while it may have acknowledged it, he said that in his consideration, he considers the criminal sanctions to be separate and apart from his consideration of a civil penalty. And if you look to his oral argument, to the argument on this, and at the appellate record, the appendix, it's at page 327. What page? 327. He quotes, incorrectly in terms of the source, but he quotes SEC . . . former SEC Commissioner Richard Breeden to say, on the subject of insider trading, he wanted to leave insider traders something like worthless, homeless, and maybe clotheless. I don't know. I'm probably not phrasing it quite right, but it was something of that order, the point being, take everything they have. That reflects the kind of bubble that was created around . . . But the judge was fairly clear in context that he was saying he wasn't going to do that. He was not intending to leave the defendant homeless and clotheless. No, but I think what he was saying is that he was pointing to that there's an appropriate consideration in thinking about the defendant's entirety of his wealth . . . But why isn't it? In other words, if somebody does something serious and a financial penalty is called for, wouldn't it make a difference whether the person is poor or rich? Would you think that someone who is already penniless or close to it should be left homeless by an appropriate fine that would make no difference to someone of great wealth? I would concede, Your Honor, that that is possibly a fair consideration. So then why isn't it? If it is a fair consideration, that's what the judge was saying, is that the number has to be material to the person or it's not really a penalty. Well, I think, Your Honor, even if that were correct, that would not . . . In terms of his abuse of discretion, what we contend is the primary abuse of discretion is his refusal to factor in the criminal penalties which speak to it as well. So it can't be both ways. It can't be selecting just the overall materiality of his wealth, but at the same time precluding the already punitive and deterrent effects that may arise from the criminal consequences. . . . language that suggests that he didn't preclude consideration of it. Now, what weight he gave it may be something you want to argue about, though that's a very difficult point to make an abuse of discretion argument on. You're arguing, though, that he said, I'm not considering it at all. And Judge Droney quoted you the language that belies that. What do you want us to look at to suggest that he drew this bright line as if there had been no criminal conviction and no criminal penalty? Well, Your Honor, I think there are three data points from his opinion, his own written opinion, that I think would support the idea that he didn't actually consider it. The first is the initial site to the appendix at 369-370 where he articulates this paradigm that I've covered already and I won't repeat myself. That's one data point. The second data point is the quotation from Brearden. While colorful, it's interesting because nobody . . . the idea that that is a relevant consideration kind of defies intuition if you realize it at that moment the defendant was already facing an 11-year sentence of incarceration. The idea of potentially leaving him homeless or clotheless is inconsistent. I just don't understand. I mean, there's absolutely nothing in his opinion. Whatever exactly Judge Rakoff meant in an off-the-cuff remark during an oral argument by citing Mr. Breedon, it's crystal clear that he did not undertake to follow that advice if indeed it did come from Director Breedon or not. I So what is the relevance of this off-the-cuff remark as compared to what the court says explicitly that it's doing? Well, because I think . . . and Your Honor, I realize I've exceeded my time. Can I continue just to finish this point? Thank you. Because, Your Honor, I think taken in isolation you might treat it as an off-the-cuff remark and that would be fair. But I think taken in conjunction with the paradigm that he constructed, it informs that. And I think the third data What he says as his paradigm, as you put it, is just that here's what this sanction is for. Now, it's perfectly reasonable for you to argue that the number that he came up with is unreasonable in light of what the penalties he was already . . . Mr. Rajaratnam was already facing. As Judge Raji said, that's a tough road to hoe, but it . . . okay, that's a plausible argument to make. But I don't see how the judge said anything incorrect about what the purposes of these various penalties are. And then he undertook to balance those as he thought fit. And whether that's right or wrong would be a question. Your Honor, I think stepping away from the quote, but going back to the paradigm, and I want to make just the third data point that I think sheds light into what the Court was thinking. In addressing the question as to whether for the purposes of calculating a penalty, the district court should look at the amount that Mr. Rajaratnam theoretically would have received, which is $4.7 million, or the larger amount. What the district court said was to credit the argument that you should base a penalty on what the defendant actually received, his quote was that that would in effect be an evasion of the defendant's responsibility for the wrongdoing he committed. The only way you can think that's an evasion is if you create this artificial bubble over the essence of the proceeding. No, not at all. He's responding to the argument that we should start thinking about $4.7 million. Clearly, I think, that's the wrong way to think about it. And that's what the judge said. Now once you decide you're thinking about it in terms of a larger amount, that doesn't mean you're in a bubble that doesn't consider the criminal penalties. That means you're starting from the larger amount, and then you consider whatever you consider. But the fact that the Court rejects the argument that I understand you're not abandoning, but that you chose not to press an oral argument, perhaps because it's not as good an argument as the abuse of discretion argument, the fact that he rejected that starting point doesn't say anything about where he's going to end up or what he's going to consider along the way. Your Honor, for the narrow point that, again just to push back respectfully, to the narrow point that it does reflect on whether he considered the criminal penalty, Mr. Rajaratnam's sentencing was both sentenced on the basis of the full amount of proceeds, not just $4.7 million that was argued in the criminal case and rejected. His forfeiture was also the entire $53.8 million. It was not the amount he just received. Which is an interesting question in itself. I was going to ask you this. How is the forfeiture calculated since the forfeiture is neither the $4.7 million nor the $33 or whatever million that became the basis for the sanction in the District Court? The answer is that in the SEC complaint addressed a subset of the stocks that were treated in the criminal case. It goes to a very minor point, but one that again . . . That answers my question. No, but it does have bearing on one point, which is the District Court below, and this goes to the abuse of discretion point, identified the Hal Gianna's factors as the ones that he was considering. He then provided no analysis of any of those factors. He treated the criminal case . . . he didn't kind of specify the SEC case versus the criminal case in thinking about it, and he focused exclusively on the entirety of the wealth, which we believe is . . . contributes to the abuse of discretion question. I respectfully would disagree that that's an abuse, but I am sympathetic to the idea that when you add up all the penalties, it certainly is rather dramatic. As Judge Radji suggested, it's a difficult thing to argue that some particular number is an abuse of discretion. The reason I think why it's a difficult argument is how does one pick a number if one has a disquieting sense that adding up all of the penalties, maybe it feels very large and one might question whether it's excessive. So I guess my question to you is putting aside the arguments about . . . let's assume that we believe that the district court did consider the criminal penalties, but perhaps did not consider them adequately. Could you suggest any methodology that one could use to distinguish between, yes, there ought to be some additional financial penalty of some unspecified amount, and what becomes a piling on? How would we even go about making that determination in your view? If you think that's an issue we should even consider. I think, Your Honor, it's squarely what we considered the important procedural issue here, which is Section 21A affords a district court judge appropriately wide discretion in making a determination of a penalty, but that discretion is not unfettered. If I were . . . Excuse me. Tell me if I don't think that somehow the criminal penalties wipe everything off the board in the civil case, and if I don't think that it's reasonable to start by thinking about he personally only received four-point-something million dollars out of these particular transactions, how would I go about deciding where between, oh, say, fifteen million and ninety million . . . What makes ninety million too much, given that ninety million has the virtue of, as the judge said, there are good reasons to give the treble amount, and treble, the maximum amount, comes out here. So how do I decide? How would I possibly decide that it should be something less, and what should that be? How do we go about doing that kind of review, in your opinion? I think from our vantage point, and I understand that there may be some skepticism about this, I think the instruction, if this were to be remanded back to the district court, would be that the district court is required to take consideration of the criminal penalties. And I understand there may be some skepticism, but what more would you expect to be done? The district court did say that it was relevant in some cases, but then it explained the different purposes of the criminal monetary sanction and civil penalties. And then on top of that, it considered the defendant's net worth, because certainly if a criminal monetary penalty left a person close to penniless, the fifth factor that's often considered, whether the penalty would reduce the person's current and future financial condition excessively, is properly considered. But he explained why that wasn't this case. What are we going to tell the judge to consider about the criminal penalties that he didn't already consider? Again, Your Honor, and I'm not fighting the hypothetical, I think it shouldn't be . . . As I see it, the judge did consider the criminal penalties and considered their different purposes and considered the defendant's financial circumstances. So when you say what the remand would do would be to tell him to consider the criminal penalties, in what way that he didn't already consider them? Well, to be very specific, Judge Rakoff-Below said that the purpose of the SEC penalty is to ensure that it is a money-losing proposition. That goal that he articulated could not be . . . it was already satisfied before he even considered a penalty, because if you were to take account indeed, if not . . . A general deterrence, right? That's what you just said, right? To make it a money-losing proposition or specific . . . I think I'm talking about specific deterrence here. One of the problems here is that the criminal penalty, the fine, is capped at $10 million. He got the maximum. He could have gone to twice the gross gain or loss, but that's one of the reasons why it was $10 million, I think, was that the maximum was $5 million under the statute. So maybe it's more than that in the setting of the SEC penalty. Well, I mean, I guess two responses. To increase the deterrent effect is my question. It could be. I think here we have a little bit of an oddity that I'm not sure by changing the rules will repeat itself where the cases were assigned to different judges. I think in practice now, the district court judge would have both cases. I assume that Judge Hallwell, in imposing the criminal penalty, balanced everything. The $10 million criminal fine with the eleven year sentence that he imposed. Our client is currently served seven of those years. Time flies. My question was, was he limited though by the statute, the criminal statute, to the $5 million times two, to the $10 million total fine? Do you know? I don't know. I thought there were more counts of conviction. There were more counts of conviction, Your Honor, that I believe were conspiracy counts as opposed to substantive counts, I believe. And I just don't have the math at my fingertips. Those have lower . . . I think he . . . Conspiracy counts have lower . . . I don't believe he maxed the fine, but I'm not sure, Your Honor. I wouldn't represent that to the court. Can I ask you something different, and that is about the forfeiture and the disgorgement here. The forfeiture, as Judge Lynch pointed out, was $50 million here. And it seemed to me, from trying to do the chronology, that our contrariness one opinion, which dealt with forfeiture, says you can only look at the individual's gain. But the second one, contrariness two, talking about disgorgement, says that you look at the entire amount, like the galleon trades here, too. Do you know if one of the reasons why the $50 million forfeiture was agreed to was because it was before contrariness one? It seems like he could have made a good argument in those days that I'm only responsible for the $4 million I made. You can't consider the rest of the galleon trades for my forfeiture. Do you know anything about the history of that? I do, Your Honor. It did predate contrariness one. Among the many issues that were swirling in the center of the storm, for lack of a better word, around his sentencing, there was the issue of what amount he should be held responsible. The focus was on the criminal sentencing piece of it. And the arguments were made to the district court that in calculating the appropriate opposed to the totality of the funds that went to innocent third parties. That doesn't really answer my question, then. Why did he agree to the $50 million forfeiture? I guess your answer is it was before contrariness. It was before Judge Hallwell. It was before contrariness, so the issue wasn't right. It hadn't been decided. It hadn't been decided. In front of Judge Hallwell, the question of 4.7 versus 53 was treated as a matter of sentencing guidelines purposes, and . . . Forfeiture is not . . . . . . different. . . . guidelines. I'm sorry. There's no guideline range for forfeiture. No, Your Honor. I'm sorry. I'm not being clear. Yeah. The difference between 4.7 and 53, 8. million was briefed before the district court for the purposes of sentencing and the guidelines, not forfeiture. And . . . For the amount of loss? Exactly. Oh, okay. And again, my recollection is not perfect on this so I apologize on dates, but I believe Judge Hallwell ruled on that issue against Mr. Rajarathan saying that he was going to be held accountable for the entire 53.8 million, albeit in the context of the guidelines on the eve of sentencing or a day or so before sentencing. The next . . . the follow-up then is that here the SEC is . . . and your client agreed that there wouldn't be any . . . there wouldn't be discouragement . . . additional discouragement sought that they would be satisfied with the forfeiture as well. Am I right about that? Yeah. And that's a function of Judge Lynch's question that because it's a subset of stocks in the criminal case, the forfeiture that he paid on the criminal case would more than account for even a bigger discouragement number and therefore, because there's no double counting, it wouldn't . . . I think we're in agreement with the SEC. You see the fine point is that discouragement applies to all the traits, the galleon traits too. You could see why there would be a higher number agreed to by the SEC and your client. Do you know if that happened or do you have any experience with that? Just to make sure I understand your Honor's question, the SEC and Defense Counsel agreed that the discouragement would be completely subsumed by the $53.8 million, but I don't think that decision-making process was done in tandem. I think the $53.8 million agreement was a function in part, and the $53.8 million agreement on the criminal side was a reaction to Judge Hallwell's ruling on the issue as briefed for the Guidelines purposes, and I think the agreement with the SEC was arrived at later. Of course, the contrariness point was raised in the Quorum Novus Petition and a panel of this Court decided among other things that Mr. Rajaratnam's situation was distinguishable from contrarinesses. That's correct, Your Honor, and I'm not pressing that issue . . . I'm trying to be mindful of that ruling, Your Honor. Excuse me? I'm trying to be mindful of that ruling. Right. Yes, I understand. All right. Thank you. I know you've got a few minutes for rebuttal, but we'll hear from you again then. Thank you for your indulgence. The SEC. May it please the Court, David LaCitta on behalf of the Securities and Exchange Commission. I think it's best to just start with the idea of the criminal penalties, and the district court did consider them. The court pointed out in its opinion that it did, and in fact, it's the same analysis that this court affirmed in the SEC v. Gupta case where the court rejected the same argument and found there was no abuse of discretion in imposing a tribal civil penalty. Gupta had argued that the district court failed to consider the deterrent effect of the criminal penalties, including prison. Gupta had been sentenced to two years, and the court said, No. 21A unambiguously authorizes a tribal penalty in light of the facts and circumstances. The district court considered and rejected this argument and considered the relevant factors, including the egregiousness of Gupta's conduct and affirmed, finding no abuse of discretion, and that's really the same analysis the court should use here. The district court in Gupta cited the district court below, but actually the Raj Ratnam decision came out first, before the SEC v. Gupta decision, and if anything, the analysis here is more thorough than in Gupta. The second point we'd like to make is statutory, that D.3 says the civil penalty may be imposed in addition to any criminal penalty, which suggests that, as the court reasoned, that the purpose of these civil penalties are to make insider trading a money-losing proposition, not just for this defendant, but for others who would consider it. The third point on this issue is that it's almost sounding like sort of a double jeopardy type argument, but in SEC v. Palmisano, which we discuss in our brief on page, we'll forget the page, but there was the same type of argument,  being for punishment and the purpose of civil penalties being more for deterrence. It . . . Let me ask you about that in the line . . . the opposing counsel, the discussion in the district court's decision, where the district court said the foremost focus of any criminal punishment is on the defendant's moral blameworthiness and on the prison time thus merited, but we all know that in determining a criminal penalty, there's a lot that applies to it, as well as the guideline provision about fines, and both of those say you should consider the deterrent effect of a fine, as well as imprisonment. Was the district court's statement right that the criminal penalties here dealt with another issue, which is moral blameworthiness, and didn't focus on deterrence at all, whether it's specific or general, so then I've got to deal with the deterrence? That seems to be the argument on the other side, but there's some language in the opinion that is worth talking about. I agree. I think that the district court did not say I'm putting aside the prison and not considering it at all. I think that you do see the references to the prison sentence, and the court is trying to grapple with it, but it really echoes what this court said in somewhat different ends. It's also been pointed out that it's difficult as a matter of methodology to compare the prison term to the monetary penalties. There's a commensurability problem, and it's just hard to figure out how a court would do that, and I think that what the court did below really is echoed in what this court said in Palmisano in trying to compare these different sanctions, and I think the court did consider the totality of the sanctions and also the criminal fine, which . . . . . What is that language troubling though? Is it to say that Judge Rakoff got it wrong that fines in the criminal sentencing don't have anything to do with deterrence, and now, I've got to fill the gap here by the SEC penalty? That's really my question, because . . . I don't . . . . . . 3572 of Title 18 says, among the factors for a fine are the 3553A factors. 3553A says deterrence, both specific and general. Do you read his statements as saying, well, I've got to do a different job here and focus on deterrence? That's my question. I don't think it's necessarily a different job. I just think among what 21 Cap A says under A2 is to consider the penalty in light of all the facts and circumstances, which certainly include the criminal penalties, including imprisonment, including a fine, and I think that the district court did that. I think that the penalty can be imposed in addition to that with a focus on monetary deterrence. We're talking about a statute here that just deals with civil penalties, just for insider trading. Right, but that's the exact problem, is that in many criminal cases, there is no counterpart civil penalty trial . . . civil penalty statute, and so in imposing sentence, the district court may compensate victims through restitution or there may be disgorgement provisions, but then there's a fine. Consistent with the 3553A factor that Judge Droney pointed you to, deterrence can inform that fine and mindful that there will be no civil penalty for a defendant in that case. Where are we here? Are we to assume that the fine did not take deterrence into consideration because it was going to be considered in the civil penalty, or how do we reconcile that role that deterrence can play and often does play in a criminal fine decision? I think there's . . . what Congress said and made a finding in this, and it said that civil penalties are an additional method to deter insider trading, and it made very clear that it wanted to provide greater deterrence than what is available in the criminal case, and there are checks and limits on what the court can do. Because of the trebling provision? There's the trebling provision. There's also the base amount of the civil penalty is always proportional because it will deal with the profits gained as a result of the trading, which means the more unlawful trading there is, the higher the penalty, the less trading, the lower the penalty. A third is, as the judge pointed out, that there's a check in terms of another factor of means to pay. It's another way of considering the totality of the fine. The district court can look at and consider a defendant's means to pay, and if it turns out that given a criminal fine and forfeiture, there's simply no money left, a court could within its discretion decide, well, I'm not going to order a civil penalty on top of that. And I think it would be very . . . there would be very strange anomalies with the methodology the court might suggest, which would be that in a criminal case where you have the most egregious conduct and you have proof beyond a reasonable doubt, you'd have defendants wanting to have the lower civil penalty. And in a case where you just have a civil case and no criminal case, so perhaps it's less egregious, the government would want to say, well, there's no criminal case, Your Honor, here, so we want civil penalties through the roof. And I just think that would just kind of be an odd way of deciding things. Let me put it another way. To go back to the questions about Judge Rakoff's comment here, why shouldn't we read that comment as just saying, well, yes, he got a big jail sentence, but that's because the jail sentence has to consider other things besides deterrence. It has to also consider the moral culpability of the defendant and things of that sort. So some component of the criminal penalties is about something else. And one shouldn't assume that the penalties that came in the criminal case account for all the deterrence that's necessary because those punishments are factoring in a bunch of other things that are not relevant to the civil fine. Is that a reasonable way of reading this, or do you agree that what Judge Rakoff was saying was that fines have nothing to do with deterrence? No, I agree with what Your Honor said. I thought you might. Now, I know that we've only touched on kind of the statutory interpretation issue, but it was raised, and I did want to, if there's no other questions about the discretionary components, I thought there may be some questions about the 21 Cap A and how it works in terms of personal gains versus total trading gains, and just have an opportunity if you would like to. Why don't you say something about it? We don't have any questions right away, but if you want to . . . Oh, I'll say something. But if you're not saying anything . . . Great. Maybe I should not say anything if everything is all . . . Just the point is that we would think that the Section 8-2 is really the way to land in this case, that it's about the person who committed the violation by trading. You calculate the total profit gained. It doesn't say gains by the defendant. And Subsection E defines profit gained, not just profit, and not just gained. It means profit gained, which is unusual, and it defines it as total trading profits. And this makes sense because the trading gains represent the harm to the investors who were defrauded by Roger Ottom's trading. So it's a proxy from the harm. And I just want to point out two intolerable loopholes. If you were to add these words, gain to such defendant, first, there'd be no civil penalty for the tipper who unlawfully gifts inside information but does not trade. That's the Gupta case where this Court affirmed the civil penalty. And the second is . . . I thought Mr. Roger Ottom's brief suggested that there could be a penalty in that case because you would construe the psychic benefit to the trader, the tipper, rather, of giving this gift to a relative as being valued at the amount that the tippee gained. Well, it's hard to treble that. But the other point I'd make is that that brief was written at a time when . . . and it's a trading gains only. Subsection E refers to trading gains only. And that brief was written at a time when Newman's holding about pecuniary benefit was the law. And if anything, the Supreme Court's decision in Salomon teaches that tippers who gift inside information are on equal footing with tippees who obtain a monetary benefit. So you would look at Subsection E, and for someone who just gives a gift, or even a pecuniary benefit such as the promise of future earnings, which is pecuniary in some way, but when you go to Subsection E, there's . . . Subsection E talks about using trading profits. So there's no . . . there would still be no civil penalty there. Of course, if Mr. Rajaratnam were correct, that you could give a civil penalty on that theory in the tipper case. It's not clear to me why the same reasoning wouldn't apply here, that the psychic and actually long-term financial benefits to Mr. Rajaratnam of gaining $30 million for the investment fund by doing insider trading on their behalf is equally calculable as being $31 million. It's certainly a reason why this penalty should be affirmed, is because the gains were in part tied to his unlawful activities. This isn't some celebrity or heiress who incidentally trades. His insider trading was tied to the profits of the firm in attracting investors. You know, the second intolerable loophole from adding the words to such defendant is we would immunize from civil penalty a person who trades in the account of, say, their nephew or mistress, and that's a common ploy to conceal insider trading. So it would be someone who doesn't exercise complete control over somebody else's account like Rajaratnam did with Goel, but it would be . . . we just see this all the time. There's trading in other people's accounts. But the person does not gain anything personally, and that would just be intolerable, and we think that 21 Cap A was particularly drafted to deal with and address with these insider trading evils. Well, particularly in comparison to other portions of the statute where Congress did specify gains by the defendant, right? Well, not only in the securities laws themselves, which we pointed out, and those laws interestingly refer to 21 Cap A and say, this is not how you calculate it for 21 Cap A. In the Exchange Act and the Securities Act, that's how they start on the authority. They say this is only for non-insider trading violations. You even have a case, Rosenthal, the published case, talks about this. But there's even, if I can add just one final textual clue about it, there is in 21A3 for controlling persons, there is a limit when the tipper is the controlled person, the controlling person's civil penalty is limited to the profits gained only by direct tippees. And that is where Congress said, we know how to limit the gain to particular defendants or particular persons. And that was a limitation on liability for brokers and investment advisors who didn't want to be held for trading gains all the way down a tipping train. So they obtained a limitation on their liability to direct tippees. So where Congress, even in this statute, wanted to limit trading gains by particular individuals, it was able to do so in 21A3. And you wouldn't have that limitation here because Roger Rodham, again, personally executed the trade. He is the person who committed the violation under A2. Thank you. Mr. Guha, you have a few minutes to rebut. Yes, Your Honor. And I'm mindful that I went over my time the first time. Don't worry about that. You've still got the three minutes. Just to address, to limit my remarks to a few points, to address on rebuttal, first the low-hanging fruit. We're certainly not arguing a double jeopardy point here. I think we're arguing that the criminal consequences should be a part of the consideration in thinking about facts and circumstances. I would posit it's probably the most relevant facts and circumstances that should be considered. Again, with the focus on what the purpose of the SEC penalty is. It's intended to be punitive, the appropriate penalty to be punitive and deterrent. And that's important, I think, when you look at what Judge Rakoff set up as his understanding of the criminal penalties. It doesn't matter whether he's correct or incorrect as to whether it served a different purpose than the SEC penalty. For the purposes of calculating the SEC penalty, the important consideration is, is there an effect on the penalties that were imposed on the criminal side for the purposes of penalty and deterrence? And dealing with the concrete case here, I think you'd be hard-pressed to suggest that the 11-year sentence, the $53.8 million forfeiture, the $10 million fine had no either punitive or deterrent effect that should have been considered seriously as a part of the assessment of a civil penalty. And again, where we may . . . It's a lot of money, that's for sure, but in his PSR, he had hundreds of millions of dollars in assets, right? He had enough assets to certainly . . . Judge Rakoff's assessment from viewing the PSR that he had enough assets to pay the maximum penalty is the case. He was ordered to do so and he did. He's honored all of his commitments before . . . He would not have exhausted all of his assets. His family would still have considerable assets after all these financial penalties, right? That's correct. They have assets here, and I'm not sure that's the inquiry here, but I think the point that is worth noting . . . Well, in other words, it's an awful lot of money, but I think your argument, I interpret it as that it would have made him and his family destitute as a result of all of these penalties, financial penalties, and I'm not being critical, I'm just saying defendants are different and $150 million in absolute terms is a lot of money, but it's not as much money for this individual as it would be for others. I understand your Honor's point, although I think I'm making a slightly different point that maybe I can clarify. The question here, to my mind, is . . . the primary question, the threshold question for the abuse of discretion is whether it's clear from the record that Judge Rakoff considered the criminal penalties in assessing the appropriate civil penalty. The question that your Honor addresses, I think it's a data point worth noting. The trades that are in question here constituted less than 1% of Galleon and Mr. Rajaratnam's trades that year. The point being that the wealth that Judge Rakoff focused on, the lion's share of it was lawfully derived. So I think that's a data point that must be considered. I think the question as to the amount he theoretically would have gained, the $4.7 million, even putting aside for the moment the statutory argument, which we're not abandoning, but it is a consideration that's worth noting in assessing both the penalty punitive impact and the deterrent impact. He paid for a theoretical gain of $4.7 million. He ended up paying on the criminal side, before the assessment of a penalty, a total of $63.8 million. A multiple of, I think, my math is terrible so I apologize, but I think it's 17 or 18 times. I'm sorry, that would be the total, but it's a significant amount. I think if, to step outside of our lawyer shoes for a moment, if you ask any person on the street, if an 11 year criminal penalty, criminal incarceration, and a $63.8 million financial penalty for a theoretical gain of $4.9 million constituted punishment and would deter them from action. I think we all know what the answer would be. And our only point here is- Okay, this has assets of $1.3 billion. Yeah, and I think when you- So, that's another factor and you've also limited it to your client's gain. Galleon gained much more than that and that was the basis for the traveling, right? Because here it was the view that your adequate deterrence required consideration of the full amount of the trading. You may be right, but I think our overarching point here, and the remedy we're asking for is fairly narrow here. This whole debate about the impact that the criminal penalties imposed should have had on civil penalties just didn't happen. Judge Rakoff's, as I said, as I mentioned and pointed to the record, Judge Rakoff's treatment of the criminal consequences in trying to assess a civil penalty was limited to theoretical discussion as to how it should be considered. There was no fulsomeness to that discussion and whether it's fulsome or not, there wasn't even much of a discussion about it. Again, we've had more of a discussion about that here. I think it's also a relative, a lot of the issues that we're talking about in the seven years that have spanned, the law on insider trading has evolved, sometimes consistently, sometimes not. For what it's worth, I think some of the leading voices on the government side are currently, including Judge Rakoff, are currently on a blue collar panel trying to assess what a statutory answer to this confusion is. All we are asking, and I don't believe that this is a significant ask, is that this be remanded to Judge Rakoff to provide the clarity that Mr. Roger Rotnam, I think, is entitled to as a matter of process, and I think even if we're to put aside our client's interests, I think other market participants are entitled to understand exactly what role the criminal penalty is going to play in a calculation of a parallel civil penalty. A position that is a matter of law in this case with that criminal penalty, this civil fine could not be imposed or just that we don't have an adequate explanation from the district judge. Our position, just to be very clear about this, I'm glad you asked the question. Our position is that we don't have an adequate record that it was considered properly. I believe it should, it must be considered. Because I had thought your argument was that it was as a matter of law impermissible, not that we had a process defect here. But now I'm hearing you and it sounds like you're complaining that there's a process defect. Well, I think, your honor, I think we have made both arguments and we stand by both arguments in the sense that I think to our statutory point. We have to tell the judge, first of all, consider the criminal fine. And by the way, when you do so, there's no way you can reach this civil penalty. Is that what you want? I think if the panel were to credit our statutory argument on whether the $4.7 million. Well, that's a different question. We're focused on the discretion issue and it goes back to what I asked you before. Which is, you say we should send it back to the judge and ask for more clarity. And that he considered this in the appropriate way. And the question that I asked you before is, what is the appropriate way? What guidance are we supposed to give the judge with respect to how to balance the amount of the criminal punishment against whatever considerations apply ordinarily in an SEC civil case? What is the advice that we give? What is the orders that we give to the judge about how to take this into account? Your honor, I promise you, let me answer your question first and then Judge Rogers can I complete, I'll complete my answer to your question. In answer to your question, if the court were to rule on the discretion point as the basis for remand. I think the instruction to Judge Rakoff should be, you must in a clear way take consideration of the criminal penalties. And we don't, as I said here today, I don't pre- What if he just says, look, I am as clear as I can be. I considered it. I thought it was important that he's suffering these criminal penalties. But at the same time, in order to accomplish actual deterrence, I think it's necessary to be this number. Period, full stop, go back to the second circuit. Did he comply with our mandate? Yes, your honor. I think we believe in good, we believe that Judge Rakoff has instructed to expressly consider the criminal penalties because we don't believe he did. And we may disagree on that, and that would obviously affect your ruling. But we believe that from his comments, he did not, he created a structure that- What you're saying basically is the way you win here is if we decide that Judge Rakoff did not consider the criminal penalties. And the remand you're asking for is to say, judge, we think either that you did not, or at least that it is unclear whether you did consider the penalties, now go back and consider them. Yes, your honor. The simple answer is yes. And one other point, your honor, it is, because we would certainly make the argument to Judge Rakoff in that consideration. How can you base your civil penalty- You'd make whatever arguments you make below, that's fine. I mean- No, no, but there's a data point that's important here as to why he didn't, as proof he didn't consider it. It was a money losing proposition going in, and that was what he anchored his decision on, creating a money losing proposition. You cannot have- Once you treble it, once you double it, once you add $1 to the amount of gain, you have made it a money losing proposition. The question is whether it is a sufficiently money losing proposition, given the likelihood of lack of detection when someone is considering ex ante the possibility of making $30 million. The question is, how much of a money losing proposition do you need to make it when somebody gets caught, so that other people considering the same activity will think about it? So, yes, I agree. The criminal forfeiture and the fine, if the forfeiture was accurately calculated, adding $10 million makes it a money losing proposition. But I think that if somebody is looking at, I could make $58 million here, and if I get caught, at least the financial side is $68 million. That might well be a risk worth taking. And that would be within his discretion, the district court's discretion, to consider and apply his judgment. He has wide discretion. Your Honor- I'm only responding to your point that it was a money losing proposition going in. Well, yes it was, but that's all for you to argue to him if and when we remand it. But, Your Honor, isn't that the tell? Isn't the tell that Judge Rakoff, in saying below, explicitly, that the purpose of an SEC civil penalty is to ensure that it's a money losing proposition. Not a sufficient money losing proposition. He said money losing proposition. Come on. Isn't the answer? What if he'd imposed a $1,000 fine? That would be a money losing proposition too, but it would be trivial. But I don't think that's what I'm saying, Your Honor. I'm saying that it was a money losing proposition going in. Because if you take account of the- A $1,000 fine would be a money losing proposition going in. For this client, in this case, going into the consideration of a civil penalty. It was already a money losing proposition, considering a theoretical gain of $4.7 million. That's an entirely unrealistic way of looking at this for somebody who is a financial titan, who is trying to run a fund and make as much profits for the fund as he possibly can. Because in the long run, it is in his financial interest not just to make a few dollars for his own investment in the fund, but to make the fund extremely successful. That's the real incentive here for somebody to engage in this kind of behavior, is to make more money for the fund. So it's not really a losing proposition, even if he doesn't get that profit right off the bat. It's not an individual investment that we're talking about. His long run success is all about making this fund profitable. So I just don't see where we're going with this. You're just constantly factoring back the argument that theoretically the discretion argument is not about, right? The argument that the base should be $4.7 million to start with. If we get past that and we're considering the deterrence argument and the discretion argument, we're no longer in that zone. If we'd agreed with you about the $4.7 million, you'd win the case much more dramatically than you would on the discretion front. But once we're talking about discretion, we're not talking about $4.7 million anymore. And I think, just in case this got lost in argument, I am agreeing with your honor that if you were to remand based on the discretion point, not the statutory point, because that would affect what the number could be if we were to prevail on that. But if the court were to remand solely on the discretion point, we have every confidence that the court below would in good faith follow the guidance to explicitly consider the criminal penalty. And he would come up with what, the court would come up with what it considers the appropriate penalty. But I do think it would give clarity that a criminal consequence must be considered to assess penalty and deterrence. And I do think for this client, it would entitle him to, given the process, I think he's entitled to. I understand that argument. Okay. Thank you, Mr. Guha. We'll reserve decision on this case.